UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

KEVIN FERNANDEZ,            )   3:06-CV-00628-LRH (RAM)
                            )
          Plaintiff,        )
                            )   **REPORT AND RECOMMENDATION**
     vs.                    )   **OF U.S. MAGISTRATE JUDGE**
                            )
THE STATE OF NEVADA, et al.,)
                            )
          Defendants.       )
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to FRCP 65 (Doc. #47). Defendants opposed the motion (Doc. #54) and Plaintiff replied (Doc. #60).

## I. BACKGROUND

Plaintiff is a prisoner at Lovelock Correctional Center (LCC) in Lovelock, Nevada in the custody of the Nevada Department of Corrections (NDOC) (Doc. #73). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983, alleging state officials violated his Fourteenth Amendment right to due process and his First Amendment right of access to the courts (*Id.*).[1] Counts II, III, IV and VII are Plaintiff's only remaining claims.

---

[1] Plaintiff also asserted Sixth Amendment and Eighth Amendment claims and an Ex Post Facto Clause claim; however, those claims (Counts I, V and VI) were dismissed by the court on April 21, 2008 (Doc. #72).

1    In Count II, Plaintiff asserts a violation of his Fourteenth Amendment right to due process (Doc. #73 at 13). Plaintiff alleges Defendants found him to be a high risk offender and ineligible for parole at a hearing held pursuant to NRS 213.1214. Plaintiff contends he has a substantive due process right in not being labeled a high risk offender and suffering the stigmatizing consequences attached to that label and Plaintiff contends he has a liberty interest in his parole eligibility date (*Id.*). Plaintiff asserts Defendants did not provide him with any due process protections before they labeled him a high risk offender and caused him to suffer the stigmatizing consequences of said label, such as making him ineligible for parole (*Id.* at 14).

In Count III, Plaintiff asserts a violation of his Fourteenth Amendment right to due process (*Id.* at 14). Plaintiff alleges Defendants failed to provide him with notice and an opportunity to be heard at the scheduled psychological review panel hearing (*Id.* at 15). Plaintiff further alleges Defendants forced him to attend the hearing without notice, then failed to provide him with notice of the evidence used against him and refused to allow him to present evidence in his defense or to present a defense on his own behalf (*Id.*). Next, Plaintiff alleges Defendants failed to swear in the witness against him and refused to provide him with a written statement of the panel's decision, including the reason for the decision and the evidence relied upon (*Id.*). Plaintiff asserts the witness relied upon by the panel gave false testimony and he was prevented from questioning the witness or presenting evidence in his defense (*Id.* at 16). Plaintiff contends he has a liberty interest in not being labeled a high risk offender and his in his parole eligibility date and he contends he has a liberty interest in his previous 1989 certification, which cannot be revoked without due process of law (*Id.*).

In Count IV, Plaintiff asserts a violation of his First Amendment right of access to the courts (*Id.* at 18).[2] Plaintiff alleges NRS 213.1214 and AR 813 restrict his right to file grievances in regards to the psychological review panel's decision on whether to certify

---

[2] Plaintiff labels Count IV as a free speech claim; however, the allegations appear to state a denial of access to the courts claim.

Plaintiff a high risk offender or eligible for parole (Doc. #73 at 18). Plaintiff asserts this restriction violates his First Amendment rights because the ability to file grievances is a constitutionally protected activity and there is no logical penological reason for the restriction (*Id.* at 19).

In Count VII, Plaintiff asserts a violation of his Fourteenth Amendment right to due process (*Id.* at 22).[3] Plaintiff alleges Defendants revoked his previous 1989 certification obtained pursuant to NRS 200.375 (subsequently amended to NRS 213.1214) without due process of law (*Id.*). Plaintiff further alleges NRS 200.375 did not allow for recertification as does NRS 213.1214; thus, NRS 213.1214 cannot be applied to him (*Id.*).

Plaintiff requests the following relief: declaratory relief, injunctive relief, compensatory damages, treble damages, punitive damages and attorney's fees and costs (*Id.* at 23-24).

In the instant motion, Plaintiff requests injunctive relief in the form of a temporary restraining order and preliminary injunction (Doc. #47). Specifically, Plaintiff requests the court enjoin Defendants from "invoking or enforcing NRS 213.1214 on Plaintiff and forcing Plaintiff to seek pre parole eligibility with the psychological review panel prior to plaintiff's Parole Board hearing for eligibility for parole, and forcing the Defendant's to recognize and deem valid the Plaintiff's prior certification pursuant to NRS 200.375 and allow the Parole Board to consider the Plaintiff eligible for parole and to so consider the application for parole with the understanding that plaintiff is not a menace to the health, safety or morals of others." (*Id.* at 3). Plaintiff further requests the court "restrain the defendants, their agents and employees, from influencing or causing the Parole Board to deny the Plaintiff's Parol Application out of retaliation for plaintiff's current litigation or the granting of this injunction (Doc. #47 at 3). Finally, Plaintiff requests the court order an expedited hearing on the instant motion (*Id.*).

---

[3] Plaintiff labels this claim a state law claim; however, Plaintiff's allegations appear to assert a violation of Plaintiff's due process rights. After screening the complaint, the court permitted Count VII to proceed inasmuch as it states a due process claim (Doc. #72 at 6).

3

## II. PRELIMINARY INJUNCTION / TEMPORARY RESTRAINING ORDER STANDARD

A temporary restraining order is available to an applicant for a preliminary injunction when the applicant may suffer irreparable injury before the court can hear the application for a preliminary injunction. FED. R. CIV. P. 65(b) (motion for preliminary injunction shall be set for hearing at earliest possible time after entry of temporary restraining order); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423 (1974) (temporary restraining order issued in state court expired ten (10) days after action was removed to federal court). The issuance of a TRO is the exercise of a very far reaching power which should never be indulged except where clearly warranted. *See Dymo Industries, Inc. v. Tapeprinter Inc.*, 326 F.2d 141, 143 (9th Cir. 1964). Requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction. *See New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347, n. 2 (1977); *Los Angeles Unified Sch. Dist. v. United States Dist. Court*, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting).

A preliminary injunction is an "extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury." *Shelton v. Nat'l Collegiate Athletic Ass'n*, 539 F.2d 1197, 1199 (9th Cir. 1976). In the prison context,

> [t]here is no iron curtain drawn between the Constitution and the prisons of this country. When the remedial powers of a federal court are invoked to protect the constitutional rights of inmates, the court may not take a hands-off approach. The duty to protect inmates' constitutional rights, however, does not confer the power to manage prisons, for which courts are ill-equipped, or the capacity to second-guess prison administrators. Federal courts should not, in the name of the Constitution, become enmeshed in the minutiae of prison operations. Our task is limited to enforcing constitutional standards and does not embrace superintending prison administration.
>
> ....
>
> As a matter of respect for the state's role and for the allocation of functions in our federal system, as well as comity toward the state, the relief ordered by federal courts must be consistent with the policy of minimum intrusion into the affairs of state prison administration that the Supreme Court has articulated for the federal courts. "[T]he principles of federalism which play such an important part in governing the relationship between federal courts and state governments" are applicable "where injunctive relief is sought ... against those

> in charge of an executive branch of an agency of state" government. We should, therefore, fashion the least intrusive remedy that will still be effective. In shaping that remedy, we must also, as a matter of judicial administration, regard the essential nature of federal courts in an adversary system. Our remedial powers are inherently judicial, not administrative.

*Toussaint v. McCarthy*, 801 F.2d 1080, 1086 (9th Cir. 1986) (quoting *Ruiz v. Estelle*, 679 F.2d 1115 (5th Cir. 1982), *amended*, 688 F.2d 266 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983)) (internal citations omitted).

A fundamental principle of a preliminary injunction is the basic function to preserve the status quo ante litem pending a determination of the action on the merits. *Larry P. v. Riles*, 502 F.2d 963, 965 (9th Cir. 1974); *Washington Capitols Basketball Club, Inc. v. Barry*, 419 F.2d 472, 476 (9th Cir. 1969); *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804 (9th Cir.) *cert. denied*, 375 U.S. 821 (1963). In the Ninth Circuit, the moving party must meet one of two tests. Under the first test, "[t]he traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest [in certain cases]. In cases where the public interest is involved, the district court must also examine whether the public interest favors the plaintiff." *Beardslee v. Woodford,* 395 F.3d 1064, 1067 (9th Cir. 2005) (citing *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992)); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Under the second test, "the moving party may meet its burden by demonstrating either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. These [last two criteria] are not separate tests, but the outer reaches 'of a single continuum.'" *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200-1201 (9th Cir. 1980) (internal citations omitted).

"The critical element ... is the relative hardship to the parties. If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of

5

success on the merits as when the balance tips less decidedly. No chance of success at all, however, will not suffice." *Benda v. Grand Lodge of Intern. Ass'n of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). At an irreducible minimum, Plaintiff must show that there is a fair chance of success on the merits. *Immigrant Assistance Project of Los Angeles County Fed'n of Labor v. Immigration and Naturalization Serv.*, 306 F.3d 842, 873 (9th Cir. 2002); *see also Stanley v. Univ. of S. Cal.,* 13 F.3d 1313, 1319 (9th Cir. 1994) (quoting *Martin v. Int'l Olympic Comm.,* 740 F.2d 670, 674-75 (9th Cir. 1984)). If the harm factor favors the nonmoving party, a preliminary injunction may be granted only if the moving party can show a strong likelihood of success on the merits. *Immigrant Assistance Project,* 306 F.3d at 873.

For some requested preliminary injunctions, the moving party has an even heavier burden. This heightened burden applies when the preliminary injunction would "(1) disturb the status quo, (2) [is] mandatory as opposed to prohibitory, or (3) provide[s] the movant substantially all the relief he may recover after a full trial on the merits." *Kikumura v. Hurley,* 242 F.3d 950, 955 (9th Cir. 2001). Where the requested preliminary injunction alters the status quo, the movant will ordinarily find it difficult to meet its heavy burden without showing a likelihood of success on the merits. *Id.*

Finally, under the Prison Litigation Reform Act (PLRA), prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) ... operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may

6

1 courts grant or approve relief that binds prison administrators to do more than the
2 constitutional minimum." *Gilmore*, 220 F.3d at 999.

## III. DISCUSSION

Subsequent to the filing of the instant motion, the court screened Plaintiff's complaint and dismissed with prejudice Count I (Ex Post Facto claim), Count V (Sixth Amendment claim) and Count VI (Eighth Amendment claim). Thus, to the extent Plaintiff's request for injunctive relief relies on these claims, said request must be denied as moot. Accordingly, the only remaining claims relevant to the instant motion are Count II (Due Process claim), Count III (Due Process claim), Count IV (First Amendment claim) and Count VII (Due Process claim).

With respect to the remaining claims, Plaintiff asserts the provisions of NRS 213.1214 and AR 813 add additional punishment to Plaintiff by significantly reducing his opportunity to shorten or reduce his sentence or term of incarceration (Doc. #47 at 6). Specifically, Plaintiff argues he was certified in 1989 under the former statute (NRS 200.375) as not being a menace to the health, safety and welfare of others, and he held that certification for seventeen (17) years (*Id.* at 7). The current statute, enacted prior to Plaintiff's return to custody in 2003 for a parole violation (purportedly unrelated to a sex offense), resulted in a revocation of Plaintiff's previous 1989 certification in 2006 and now requires Plaintiff to be certified or recertified pursuant to the provisions of AR 213.1214 before he will be eligible again for parole (*Id.*). In short, Plaintiff asserts under the new statute, he faces the risk of being ineligible for parole, which subjects him to the possibility of additional imprisonment (*Id.*). Thus, Plaintiff asserts NRS 213.1214 and AR 813 violate his due process rights because they do not provide any due process protections and the current certification provisions have a higher standard of evaluation than the previous provisions (*Id.*). Plaintiff further asserts that he has a liberty interest in not being labeled a high risk offender with the stigmatizing consequences attached to said label (Doc. #47 at 7). Plaintiff contends he has a reasonable probability of success on the merits of his substantive and procedural due process claims and

7

his First Amendment claim (*Id.* at 12-28).  Finally, Plaintiff contends that he will suffer irreparable injury if injunctive relief is not granted (*Id.* at 28).

Defendants argue Plaintiff cannot show he enjoys a reasonable likelihood of success on the merits; however, Defendants' opposition only argues the merits of Plaintiff's Ex Post Facto claim, which was subsequently dismissed by the court (Doc. #53).

Plaintiff responds that his motion should be granted because Defendants did not address his arguments with respect to his Due Process claims and First Amendment claim (Doc. #60 at 7).

## A.    FAILURE TO OPPOSE PLAINTIFF'S ARGUMENTS ON ALL CLAIMS

Under LR 7-2(d), "[t]he failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." The Ninth Circuit, in interpreting an Arizona local rule (Rule 11(g)) that is similar to LR 7-2(g), found such a rule affords the court discretion in its application despite its mandatory language. "'Consent' when imposed by rules such as [LR 7-2(g)] can be 'withdrawn' by 'permission' of the court given in its 'discretion.'  That is, fictional 'consent' under [LR 7-2(g)] is never a burden from which the transgressor can not be relieved.  It is of no consequence whether one views [LR 7-2(g)] as affording the court discretion to determine when a failure to respond should be deemed consent or to determine when he who has failed to respond should be relieved of the burden of consent.  Either way the administration of the rule inescapably will embody discretion." *United States v. Warren*, 601 F.2d 471, 473-474 (9th Cir. 1979); *see also Ghazali v. Moran*, 46 F.3d 52 (9th Cir. 1995) (finding failure to follow district court's local rules is a proper ground for dismissal and holding district court did not abuse its *discretion* in entering judgment of dismissal for the failure).

As previously stated, the issuance of a TRO is the exercise of a very far reaching power which should never be indulged except where clearly warranted. *Dymo Industries, Inc.*, 326 F.2d at 143.  In order to determine if a TRO is clearly warranted in this case, the court must consider Plaintiff's motion on the merits and not merely grant said motion based on

Defendants' failure to follow LR 7-2(g). Accordingly, this Report and Recommendation addresses Plaintiff's motion on the merits with respect to his remaining claims (Counts II, III, IV and VII).

**B.  PROBABLE SUCCESS ON THE MERITS**

    **1.  Fourteenth Amendment Due Process (Counts II, III and VII)**

The Fourteenth Amendment prohibits any state from depriving "any person of life, liberty, or property, without due process of law," and protects "the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Those who seek to invoke due process protections must establish one of these interests it at stake. *Wilkinson v. Austin*, 545 U.S. 209 (2005). An examination of Plaintiff's due process claims requires the court answer two (2) questions: 1) Is there such a liberty interest? and 2) If so, what process is due? *Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997).

A liberty interest may arise from either of two (2) sources: the due process clause or state law. *Id.*; *see also Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Toussiant v. McCarthy*, 801 F.2d 1080, 1089 (9th Cir.1986), *cert. denied*, 481 U.S. 1069 (1987). In the prison setting, a liberty interest arising from the Constitution itself is implicated when conditions of confinement "exceed[] the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Vitek v. Jones*, 445 U.S. 480, 493 (1980) (transfer to mental hospital); *Washington v. Harper*, 494 U.S. 210, 221-222 (1990) (involuntary administration of psychotropic drugs). A state created liberty interest, on the other hand, is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

To reiterate, in Count II, Plaintiff alleges his due process rights were violated when Defendants applied NRS 213.1214 to him and found Plaintiff to be a high risk offender, thus,

9

making him ineligible for parole until a psychological review panel certifies Plaintiff pursuant to the statute (Doc. #47). Plaintiff contends he has a substantive due process right in not being labeled a high risk offender and suffering the stigmatizing consequences attached to said label (*Id.* at 13). Plaintiff further contends he has a liberty interest in his parole eligibility (*Id.*). Plaintiff alleges Defendants did not provide him with any due process protections before labeling him a high risk offender and deeming him ineligible for parole (*Id.*).

In Count III, Plaintiff alleges his due process rights were violated when Defendants scheduled a psychological review panel pursuant to NRS 213.1214 without providing Plaintiff with notice and an opportunity to be heard (*Id.* at 15). Plaintiff again contends he has a liberty interest in not being labeled a high risk offender and in his parole eligibility (*Id.* at 16). Plaintiff also alleges his previous 1989 certification cannot be taken away from him without due process and Defendants' revocation of his 1989 certification resulted in his parole eligibility being taken away causing him possible additional incarceration and significantly reducing his opportunity to decrease his prison term (*Id.* at 17). Thus, Plaintiff contends NRS 213.1214 is unconstitutional on its face and as applied to him because it doesn't provide due process protections (*Id.* at 17-18).

In Count VII, Plaintiff alleges his due process rights were violated when Defendants applied NRS 213.1214's recertification requirements to him because he is not subject to said requirements where he was previously certified pursuant to NRS 200.375, which was the statute in effect at the time of Plaintiff's conviction (*Id.* at 22). Plaintiff asserts NRS 200.375 did not allow for recertification and because he was already certified under NRS 200.375 in 1989, Defendants cannot apply the recertification requirements of NRS 213.1214 to him (*Id.* at 22-23).

///
///
///
///

NRS 213.1214 provides:

1. The Board shall not release on parole a prisoner convicted of an offense listed in subsection 5 unless a panel consisting of:

(a) The Administrator of the Division of Mental Health and Developmental Services of the Department of Health and Human Services or his designee;

(b) The Director of the Department of Corrections or his designee; and

(c) A psychologist licensed to practice in this State or a psychiatrist licensed to practice medicine in this State,

certifies that the prisoner was under observation while confined in an institution of the Department of Corrections and does not represent a high risk to reoffend based upon a currently accepted standard of assessment.

2. A prisoner who has been certified pursuant to subsection 1 and who returns for any reason to the custody of the Department of Corrections may not be paroled unless a panel recertifies him in the manner set forth in subsection 1.

3. The panel may revoke the certification of a prisoner certified pursuant to subsection 1 at any time.

4. This section does not create a right in any prisoner to be certified or to continue to be certified. No prisoner may bring a cause of action against the State, its political subdivisions, or the agencies, boards, commissions, departments, officers or employees of the State or its political subdivisions for not certifying a prisoner pursuant to this section or for refusing to place a prisoner before a panel for certification pursuant to this section.

5. The provision of this section apply to a prisoner convicted of any of the following offenses: ...

NRS 213.1214.

The parties do not dispute that Plaintiff was convicted of an offense listed under subsection five and is currently serving a term of incarceration based on that conviction. The dispute is whether Plaintiff's conviction, which took place prior to the enactment of NRS 213.1214, nevertheless subjects Plaintiff to the provisions of NRS 213.1214 and not the previous statute in effect at the time of Plaintiff's conviction, and if so, whether Plaintiff was entitled to any due process protections before Defendants purportedly revoked his previous certification and subjected Plaintiff to the provisions of NRS 213.1214.

The plain language of the statute does not specify *when* an inmate must have been convicted of an offense listed in subsection five. However, NRS 213.1214(2) expressly provides

11

that "[a] prisoner who has been certified *pursuant to subsection 1* and who returns for any reason to the custody of the Department of Corrections may not be paroled unless a panel recertifies him in the manner set forth in subsection 1." NRS 213.1214 (emphasis added). Thus, the language indicates the provisions of subsection five only apply to an inmate who was certified under subsection one and not those certified under a previous statute.

Here, Plaintiff argues he was not certified pursuant to subsection one and there is no dispute that he was previously certified pursuant to NRS 200.375. Plaintiff was subsequently returned to prison for a parole violation after the enactment of NRS 213.1214. Accordingly, it would appear Plaintiff's previous certification under NRS 200.375 was revoked after his parole violation and then Plaintiff was brought before the psychological review panel in order to be certified pursuant to subsection one. Thus, the crucial inquiries are whether Plaintiff had a protected liberty interest in his previous certification under NRS 200.375, such that it could not be revoked without due process, and whether Plaintiff has a protected liberty interest under NRS 213.1214 such that he is entitled to due process before being brought before the psychological review panel for a certification determination. The answer to both these inquiries is no. Plaintiff has no protected liberty interest in his high risk offender classification or his parole eligibility status; thus, no due process protection need be afforded under either statute. Accordingly, notice and a hearing were not required prior to revoking Plaintiff's previous certification or requiring Plaintiff to go before a psychological review panel to determine whether he should be certified or recertified.

a. <u>Liberty Interest in High Risk Offender Classification</u>

Plaintiff argues he has a protected liberty interest in not being labeled a high risk offender due to stigmatizing consequences (Doc. #47 at 13). However, a high risk offender classification alone does not implicate a liberty interest even with stigmatizing consequences. What implicates a protected liberty interest is the stigmatizing classification *together with* a mandatory treatment program. *Neal*, 131 F.3d at 818.

12

In *Neal*, the court found a liberty interest implicated where the inmate was subject to stigmatizing consequences of being labeled a sex offender *coupled with* a mandatory treatment program that effected his parole eligibility. *Id.* Neither the stigmatizing classification nor the mandatory treatment program alone implicated a liberty interest. Thus, under *Neal*, Plaintiff must do more than show he was subjected to the classification of a high risk offender even if it does have stigmatizing consequences; he must also show he is being subjected to "some mandatory coercive treatment" associated with that classification that affects a liberty interest, such as parole. *Neal* 131 F.3d at 818. Plaintiff has failed to meet his burden.

As will be discussed more fully *infra*, Plaintiff has no liberty interest in parole or parole eligibility in Nevada. However, even if Plaintiff had a liberty interest in his parole eligibility, being labeled or classified a high risk offender, alone, does not implicate the "kind of deprivations of liberty that require procedural protections." *Id.* at 830. Plaintiff must also show he is being subjected to "some mandatory coercive treatment" associated with the classification. *Id.* Although Plaintiff must go before a psychological review panel prior to going before the parole board in order for the panel to determine Plaintiff's parole eligibility, there is no mandatory coercive treatment associated with the panel's findings. In fact, Plaintiff admits that the panel did not even give him guidance in needed therapy, much less force him to undergo mandatory therapy or some other form of mandatory treatment prior to becoming eligible for parole (Doc. #47 at 20). The panel merely reviews Plaintiff to determine if they should certify that he has been under observation while confined in an institution of the Department of Corrections and does not represent a high risk to reoffend based upon a currently accepted standard of assessment. NRS 213.1214(1)(c). The statute is not penal; it merely "provides an evaluation standard for the pre-parole hearing panel to follow, requiring it to consider relevant evidence regarding whether a prisoner suffers from a sexual deviancy that may cause recidivism." *Glauner v. Miller*, 184 F.3d 1053, 1055 (9th Cir. 1999). Thus, under these facts, Plaintiff has failed to show he has a liberty interest in his "high risk offender" classification.

13

        b.    <u>Liberty Interest in Parole Eligibility</u>

State law may create enforceable liberty interests in the prison setting. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989). The Supreme Court has recognized state created liberty interests in parole where the state statute contained mandatory language. *Board of Pardons v. Allen*, 482 U.S. 369 (1987). However, in Nevada, contrary to Plaintiff's assertion, there is no constitutional right to parole. NRS 213.10705. In Nevada, the "Legislature finds and declares that the release or continuation of a person on parole or probation is an act of grace of the State. No person has a right to parole or probation, or to be placed in residential confinement, and it is not intended that the establishment of standards relating thereto create any such right or interest in liberty or property or establish a basis for any cause of action against the State, its political subdivisions, agencies, boards, commissions, departments, officers or employees." *Id*. Furthermore, in the Ninth Circuit, a parole release determination is not subject to all the due process protections of an adversary proceeding even when a protected liberty interest exists. *Pedro v. Oregon Parole Bd*., 825 F.2d 1396, 1398-1399 (9th Cir. 1997).

Under these facts, where there is no liberty interest in parole, there is no liberty interest in parole eligibility. And where there is no liberty interest in parole eligibility or parole, there can be no due process violation. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979) (inmate has no protectible expectation of parole unless that expectation is created by state statute); *Severance v. Armstrong*, 96 Nev. 836, 839 (1980) (NRS 213.1099 does not confer a legitimate expectation of parole release and therefore does not create a constitutionally cognizable liberty interest sufficient to invoke due process). Neither NRS 213.1214, nor NRS 200.375 as enacted when Plaintiff was convicted, conferred a legitimate expectation of parole release. Plaintiff has not argued, nor can he argue, that he would necessarily have been granted parole but for the passage of NRS 213.1214, even with his prior certification under NRS 200.375. Any certification, whether prior or current, merely puts Plaintiff before the parole board; it does not guarantee his release. Therefore, regardless

of which statute Plaintiff contends applies to his conviction (NRS 200.375 or NRS 213.1214), he has failed to show he has a protected liberty interest in his parole eligibility where there is no liberty interest in parole itself under Nevada law. Accordingly, Plaintiff has failed to show even a fair likelihood of success on the merits with respect to his due process claims and, at an irreducible minimum, Plaintiff is required to show a fair chance of success. *Immigration and Naturalization Serv.,* 306 F.3d at 873.

### 2. First Amendment (Count IV)

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Legitimate penological interests include "the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of prisoners." *Procunier v. Martinez*, 416 U.S. 396 (1974) (footnote omitted), *limited by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Within the prison context, the Supreme Court has found a prisoner has a First Amendment right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1966) (inmates have fundamental constitutional right of access to the courts). That right is limited to direct criminal appeals, habeas petitions and civil rights actions. *Id.* at 354. Furthermore, an inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury. *Id.* at 351. In order to establish an actual injury, the inmate must demonstrate that the official acts or omissions "hindered his efforts to pursue a legal claim." *Id.* at 351.

In Count IV, Plaintiff alleges his First Amendment rights were violated when Defendants barred him from filing grievances challenging the decision of the panel that labeled him a high risk offender under NRS 213.1214 (Doc. #73 at 18). Plaintiff argues NRS 213.1214 is unconstitutional because it restricts his ability to file grievances, appeal or seek judicial intervention or redress with respect to the panel's decision to label Plaintiff a high risk offender (*Id.* at 18-19).

In the Ninth Circuit, "[t]here is no legitimate claim of entitlement to a grievance procedure" under the First Amendment. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), *cert. denied*, 488 U.S. 989 (1988) (a prisoner does not have a protected liberty interest in prison grievance procedures). However, "the right of meaningful access to the courts extends to *established* jail grievance procedures." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) (emphasis added). The inability to file a claim can establish a violation of the right of access to the courts if Plaintiff can show he suffered an actual injury.

Here, Plaintiff has failed to show he suffered any actual injury with respect to Defendants' application of NRS 213.1214 to him. As previously explained, Plaintiff has no protected liberty interest in parole or his parole eligibility and the panel's decision whether or not to certify Plaintiff merely determines his parole eligibility; thus, he has not stated a constitutional violation of his rights. Furthermore, Plaintiff has not been precluded from bringing this suit, thus his right of access to the courts with respect to his claims was not frustrated. Accordingly, Plaintiff has again failed to show, at an irreducible minimum, a fair chance of success on the merits of his First Amendment claim.

### C. POSSIBILITY OF IRREPARABLE INJURY

As previously stated, no chance of success on the merits will not suffice on a motion for temporary restraining order or preliminary injunction. *Benda*, 584 F.2d at 315. Thus, the court need not determine whether Plaintiff may suffer the possibility of irreparable injury. Nevertheless, as discussed in the First Amendment context, Plaintiff has failed to show he suffered any actual injury and has failed to show he will suffer any actual injury in the future; thus, he has not shown a possibility of irreparable injury warranting injunctive relief.

Because Plaintiff has failed to show a likelihood of success on the merits or that he will suffer irreparable injury, Plaintiff's motion for a TRO and preliminary injunction should be **DENIED**.

///

///

16

**RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to FRCP 65 (Doc. #47).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: August 6, 2008.

_____
UNITED STATES MAGISTRATE JUDGE