**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

KEVIN FERNANDEZ,              )     3:06-cv-00628-LRH (WGC)
                              )
            Plaintiff,        )     **REPORT & RECOMMENDATION**
                              )     **OF U.S. MAGISTRATE JUDGE**
      vs.                     )
                              )
STATE OF NEVADA, et. al.      )
                              )
            Defendants.       )
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's motion for an evidentiary hearing and to conduct limited discovery with respect to the settlement agreement. (Doc. # 552.) After a thorough review, the court recommends that Plaintiff's motion be denied.

## I. BACKGROUND

Plaintiff Kevin Fernandez is currently in the custody of the Nevada Department of Corrections (NDOC). (Pl.'s Third Am. Compl. 2 (Doc. #306).) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*)

In the only remaining cause of action, Plaintiff claims that because Defendants labeled him a high-risk sex offender under Nevada Revised Statute § 213.1214 and Administrative Regulation (AR) 813, he is ineligible for parole and has suffered stigmatizing consequences from the label in violation of his procedural due process rights. (Doc. #306 16-19, 20-25, 32-34, Doc. # 337, Doc. # 416, Doc. # 454.)

After granting summary judgment as to the majority of Plaintiff's claims, the case was

1 set for trial on March 1, 2011, and referred to Magistrate Judge McQuaid for purposes of
2 conducting a settlement conference. (Doc. # 476, Doc. # 479.) A settlement conference was
3 conducted on October 6, 2010, and the parties were unable to reach a settlement. (Doc. # 501.)

4         The parties continued settlement negotiations on their own, and on February 24, 2011,
5 Defendants filed a notice of settlement. (Doc. # 532.) The notice stated that the parties had
6 reached a settlement and were in the process of finalizing a written agreement. (*Id*.) The notice
7 further informed the court that a stipulation for dismissal would be filed as soon as Defendants
8 fulfilled certain obligations under the agreement. (*Id*.) Defendants also requested that the
9 March 1, 2011 trial date be vacated. (*Id*.)

10         Both parties have now moved to enforce the settlement agreement. (Pl.'s Mot. (Doc. #
11 564) and Defs.' Mot. (Doc. # 577).) Plaintiff now seeks an evidentiary hearing in connection
12 with the motion to enforce the settlement agreement, and to conduct limited discovery on this
13 issue. (Doc. # 552.)

14 **II. LEGAL STANDARD**

15         The court has inherent authority under federal law to enforce a settlement agreement
16 in an action pending before it. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987); *TNT*
17 *Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986) (citations omitted)*; see also*
18 *Marks-Foreman v. Reporter Pub. Co.*, 12 F.Supp.2d 1089, 1092 (S.D. Cal. 1998) (citations
19 omitted). A settlement agreement must meet two requirements to be enforced. First, it must
20 be a complete agreement. *Callie*, 829 F.2d at 890**.** Second, both parties or their authorized
21 attorneys must agree to the terms of the settlement. *See Harrop v. Western Airlines, Inc.*, 550
22 F.2d 1143, 1144-45 (9th Cir. 1977). If a party gives his or her attorney express permission to
23 enter a settlement agreement, the attorney may do so. *Id*. at 1145. Where material facts
24 concerning the terms or existence of settlement agreement are disputed, the parties are entitled
25 to an evidentiary hearing. *Callie*, 829 F.2d at 890.

26 ///
27 ///
28

## III. DISCUSSION

**A. Factual Background**

The court has gleaned the factual background concerning settlement of this matter from the motions to enforce the settlement filed by the parties, which is relevant for purposes of determining the instant motion.

The parties reached a settlement of this matter on February 3, 2011, which was to be reduced to a formal written agreement. (Doc. # 577 at 1, 2, Doc. # 577-2 Ex. O (Lerud Decl.) at ¶¶ 4, 5.) On the same day, defense counsel prepared a written agreement memorializing the negotiations and agreement, which was sent to Plaintiff. (Doc. # 577 at 2-3, Doc. # 577-2 Ex. A.) The written agreement sent to Plaintiff indicated that Defendants agreed to the following:

> 1. Defendants agree to make a concerted effort to place Fernandez in custodial housing in another available state.
> 2. While interstate transfer is pending, Defendants agree to transfer Fernandez from High Desert State Prison to Nevada State Prison, to be housed in Unit 12 long-term administrative segregation.
> 3. *In the event of the closure of the administrative segregation unit at Nevada State Prison*, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation. It is understood that Fernandez's long-term housing may be affected by Fernandez's request for a transfer not contemplated by this Agreement, or any disciplinary incidents that may occur.
> 4. Defendants agree Fernandez will be transported from High Desert State Prison to Nevada State Prison in a separate cage in the transport vehicle. In addition, during this transfer, Fernandez will be held in a cell or space separate from other inmates while held in any institutional transport/transfer unit.
> 5. Defendants further agree that Fernandez will be brought before the Psychological Review Panel for a new hearing within forty-five days of being received in a Northern Nevada institution, and the psychological evaluations preceding the hearing will be completed by Northern Nevada staff. By entering into this Agreement, Fernandez understands the time-frame for a new Psychological Review Panel hearing as contained in the Court's order of February 1, 2011, is waived so that Fernandez can be evaluated by Northern staff. In relation to this hearing, Fernandez will receive all due process protections described by the Court in its Report and Recommendation of February 22, 2010.
> 6. Defendants further agree to withdraw their objection to Fernandez's request to have the court record in 3:06-cv-628-LRH-RAM sealed. By withdrawing their objection, Defendants agree to take no position with respect to Plaintiff's request.

(Doc. # 577-2 Ex. A (emphasis added).) In exchange, Plaintiff agreed to enter a stipulation for dismissal of this action. (*Id.*)

In the interim, Plaintiff retained attorney Jeffrey Blanck to review the settlement agreement. (Doc. # 577-2 Ex. O (Lerud Decl.) at ¶ 6.) On February 4, 2011, Mr. Blanck's office

3

contacted defense counsel and a copy of the settlement agreement was sent to his office. (Doc. # 577 at 3, Doc. # 577-2 Ex. B.)

On February 14, 2011, defense counsel received an email from Mr. Blanck with some requested changes to the original settlement agreement. (Doc. # 577 at 3, Doc. # 577-2 Ex. C.) None of the changes requested by Mr. Blanck were substantive. (Doc. # 577-2 Ex. C.) Mr. Blanck also referenced requested changes requested directly by Plaintiff. (*Id.*) On the same date, Mr. Blanck sent another email indicating he had spoken with Plaintiff and would be sending on Plaintiff's requested changes. (Doc. # 577 at 3, Doc. # 577-2 Ex. D.)

On February 16, 2011, Mr. Blanck sent defense counsel another email containing the changes requested directly by Plaintiff. (Doc. # 577 at 3, Doc. # 577-2 Ex. E.) Plaintiff requested the following substantive changes with respect to Defendants' obligations:

> 1. Defendants agree to immediately exercise all available efforts to secure custodial housing transfer for Fernandez within any other available state, excluding the State of California, including but not limited by, making such efforts with those twelve states discussed at the February 3, 2011 telephonic conference between Fernandez to Alicia Lerud, Rex Reed, Don Helling. Defendants agree not to transfer Fernandez to California. Defendants agree to remove Fernandez from any such placement within 90 days of making such written request by Fernandez.
> 2. Insert word "immediately" between "to" and "transfer" in the first line of the sentence.
> 3. *In the event of the closure of the Nevada State Prison*, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation. It is understood that Fernandez's long-term housing may be affected by Fernandez's request for a transfer not contemplated by this Agreement.
> 5. Change "forty-five days" to "thirty days." Add Docket number to referenced court orders.

(Doc. # 577-2 Ex. E at 30 (emphasis added).)

On February 16, 2011, defense counsel spoke with Mr. Blanck regarding the requested changes, and a revised version of the settlement agreement was sent to Plaintiff and Mr. Blanck. (Doc. # 577 at 3, Doc. # 577-2 Ex. O (Lerud Decl. at ¶ 6, Ex. F.) The revised settlement agreement provided the following with respect to Defendants' obligations:

> 1. Defendants agree to immediately exercise all available efforts to secure a custodial housing transfer for Fernandez to another state with which Nevada has an interstate compact agreement, including but not limited by making such efforts with those states that currently "owe" Nevada time as discussed at the February 3, 2011 telephonic conference between Fernandez, Alicia Lerud, Rex Reed, and Don Helling. Defendants agree that they will not seek to place

4

>   Fernandez in California.
>   2. While interstate transfer is pending, Defendants agree to immediately transfer Fernandez from High Desert State Prison to Nevada State Prison, to be housed in Unit 12 long-term administrative segregation.
>   3. *In the event of the closure of the administrative segregation unit at Nevada State Prison*, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation. It is understood that Fernandez's long-term housing may be affected by Fernandez's request for a transfer not contemplated by this Agreement.
>   4. Defendants agree Fernandez will be transported from High Desert State Prison to Nevada State Prison in a separate cage in the transport vehicle. In addition, during this transfer, Fernandez will be held in a cell or space separate from other inmates while held in any institutional transport/transfer unit.
>   5. Defendants further agree that Fernandez will be brought before the Psychological Review Panel for a new hearing within forty-five days of being received in a Northern Nevada Institution, and the psychological evaluations preceding the hearing will be completed by Northern Nevada staff. By entering into this Agreement, Fernandez understands the time-frame for a new Psychological Review Panel hearing as contained in the Court's order of February 1, 2011 (Docket # 529), is waived so that Fernandez can be evaluated by Northern staff. In relation to this hearing, Fernandez will receive all due process protections as described by the Court in its Report and Recommendation of February 22, 2010 (Docket # 416).
>   6. Defendants further agree to withdraw their objection to Fernandez's request to have the court record in 3:06-cv-0628-LRH-RAM sealed. By withdrawing their objection, Defendants agree to take no position with respect to Plaintiff's request.

(Doc. # 577-2 Ex. F at 38-39 (emphasis added).)

On February 23, 2011, Mr. Blanck's office sent another email requesting a final change to the first revised settlement agreement. (Doc. # 577 at 3, Doc. # 577-2 Ex. G.) The proposed change read as follows: "*In the event of the closure of all administrative segregation units at Nevada State Prison*, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation." (Doc. # 577-2 Ex. G (emphasis and underscore added).)

A final version of the settlement agreement incorporating the requested change was sent back to Mr. Blanck. (Doc. # 577-2 Ex. G.)

On February 24, 2011, the Agreement was signed on behalf of Plaintiff, and the signature page was emailed to Ms. Lerud. (Doc. # 577 at 5, Doc. # 577-2 Ex. H, Ex. I.)

On March 10, 2011, Plaintiff was transferred from High Desert State Prison (HDSP) to Nevada State Prison (NSP). (Doc. # 577 at 5, Doc. # 577-2 Ex. P (Reed Decl.) at ¶ 6.)

1    On March 24, 2011, the signature page of the final agreement was received back from
2 Don Helling. (Doc. # 577 at 6, Doc. # 577-2 Ex. I.)
3    On March 24, 2011, an executed copy of the settlement agreement was sent to Plaintiff
4 with a copy of a stipulation for dismissal. (Doc. # 577 at 6, Doc. # 577-2 Ex. J.) It appears that
5 when the executed agreement was sent to Plaintiff, the signature page was inadvertently
6 attached to the first revised version, rather than to the final agreement. (*Id.*)
7    On April 5, 2011, Plaintiff was transferred from NSP to Ely State Prison (ESP) due to the
8 closure of the only remaining administrative segregation unit at ESP. (Doc. # 577 at 6, Doc. #
9 577-2 Ex. T, Ex. P (Reed Decl.) at ¶ 7.)
10   On April 26, 2011, Mr. Blanck's office sent an email to defense counsel stating that
11 Plaintiff had been moved from NSP to ESP. (Doc. # 577-2 Ex. K.) The email also stated that
12 the settlement negotiations included a requested change regarding a transfer to ESP only if *all*
13 administrative segregation units at ESP were closed. (*Id.*) The email also inquired why the
14 executed agreement did not reflect this change. (*Id.*)
15   On the same date, defense counsel responded to Mr. Blanck's office, stating that the
16 transfer was completed because the long-term administrative segregation unit at ESP was
17 closed. (Doc. # 577-2 Ex. K.) Defense counsel also confirmed that the requested change should
18 have been included in the final executed settlement agreement, but an earlier revision was
19 inadvertently sent with the signature page of the agreement. (*Id.*) Defense counsel confirmed
20 that the administrative segregation unit at NSP had closed, and that Plaintiff had therefore
21 been transferred in accordance with the settlement agreement. (Doc. # 577-2 Ex. O (Lerud
22 Decl.) at ¶ 10.)
23   On April 28, 2011, defense counsel left a message for Mr. Blanck asking how he wanted
24 to proceed in light of the error in the forwarded version of the settlement agreement, but
25 received no response. (Doc. # 577 at 7, Doc. # 577-2 Ex. O (Lerud Decl.) at ¶ 11.)
26   On May 12, 2011, Plaintiff was transferred from ESP to Warm Springs Correctional
27 Center to await out-of-state transfer. (Doc. # 577-2 Ex. T.) On May 18, 2011, Plaintiff was
28

1 transferred to custodial housing in North Dakota. (*Id.*)

2 In July 2011, Plaintiff contacted defense counsel arguing that the settlement agreement was changed after he signed in, resulting in his transfer to ESP. (Doc. # 577 at 8, Doc. # 577-2 Ex. M.) Defense counsel explained the error regarding the attachment of the first revised version of the agreement. (*Id.*)

**B. Analysis**

Plaintiff moves the court for an evidentiary hearing and limited discovery in connection with his motion to compel enforcement of the settlement agreement. (Doc. # 552.)

Plaintiff argues that the final settlement agreement should have included a term that Plaintiff would be housed at NSP in long term administrative segregation while waiting for interstate transfer until NSP closed. (Doc. # 552 at 2.) Plaintiff further contends that a term of the agreement was that Plaintiff's interstate transfer would be completed in secret and that the location of his transfer would remain secret. (Doc. # 552 at 3.) Plaintiff also seeks to conduct limited discovery on these issues. (Doc. # 552 at 6.)

**1. Request to conduct limited discovery**

Plaintiff's request to conduct limited discovery on these issues should be denied. While Plaintiff states that he would like to propound twenty-five (25) interrogatories and requests for production of documents on these limited issues, he does not describe what information he seeks through this discovery. Each of the parties have produced a large volume of documents related to the negotiation of the settlement in this case. Plaintiff has not identified what additional information he seeks in discovery. Nor does he explain how such additional information is necessary to argue his motion. Therefore, Plaintiff's request to conduct limited discovery should be denied.

**2. Request for evidentiary hearing**

The court will now consider whether Plaintiff is entitled to an evidentiary hearing regarding the terms of the settlement agreement.

As indicated above, where material facts concerning the terms or existence of settlement

7

agreement are disputed, the parties are entitled to an evidentiary hearing. *Callie*, 829 F.2d at 890.

It is clear from the communications and varying versions of the settlement agreement produced by Plaintiff and Defendants that keeping Plaintiff's interstate transfer and transfer location a secret was *never* a term of the agreement. In fact, the first mention of it is in Plaintiff's motion. This term is not contained in any of the drafts of the agreement, and it was not in the final version of the agreement that Plaintiff authorized his counsel to sign on his behalf. (Doc. # 577-2 Ex. A, Ex. B, Ex. C, Ex. E, Ex. F, Ex. G.) Nor was it contained in the list of requested changes sent directly by Plaintiff. (Doc. # 577-2 Ex. E.) Accordingly, the court recommends that Plaintiff's request for a hearing in this regard be denied.

Next, the court must determine whether a hearing should be held regarding the term governing the transfer from NSP to ESP. The final version of the agreement, as agreed to by Plaintiff's counsel Mr. Blanck, stated that Plaintiff would be transferred to ESP if *all* administrative segregation units at NSP were closed. (Doc. # 577-2 Ex G.) Plaintiff argues that it should have read that he would only be transferred to ESP upon the closure of NSP. (Doc. # 552.)

The initial version of the settlement agreement circulated to Plaintiff stated:

> 3. *In the event of the closure of the administrative segregation unit at Nevada State Prison*, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation. It is understood that Fernandez's long-term housing may be affected by Fernandez's request for a transfer not contemplated by this Agreement, or any disciplinary incidents that may occur.

(Doc. # 577-2 Ex. A at 6 (emphasis added).) A copy of this version of the settlement agreement was also sent to Mr. Blanck. (Doc. # 577-2 Ex. B.)

Mr. Blanck did not suggest any changes to this term of the agreement. (Doc. # 577-2 Ex. C.) Mr. Blanck forwarded some requested changes that he received directly from Plaintiff. (Doc. # 577-2 Ex. E.) One of his proposed changes was regarding a transfer to ESP from NSP. The language of his requested change was as follows:

> 3. *In the event of the closure of the Nevada State Prison*, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative

8

> segregation. It is understood that Fernandez's long-term housing may be affected by Fernandez's request for a transfer not contemplated by this Agreement.

(Doc. # 577-2 Ex. E at 30 (emphasis added).)

Defense counsel had a conversation with Mr. Blanck concerning the proposed revisions, and subsequently circulated a revised version of the settlement agreement. (Doc. # 577-2 Ex. F.) This revised version of the settlement agreement was also sent to Plaintiff at the prison. (*Id*.) Notably, the revised version of the agreement did not contain Plaintiff's proposed language. The revised version contained the following language concerning a transfer from NSP to ESP:

> 3. *In the event of the closure of the administrative segregation unit at Nevada State Prison*, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation. It is understood that Fernandez's long-term housing may be affected by Fernandez's request for a transfer not contemplated by this agreement.

(Doc. # 577-2 Ex. F (emphasis added).) Thus, even after discussing the proposed changes with Plaintiff's counsel, the revised version did not contain the requested change with respect to the term governing transfer to ESP.

In response to receiving this version of the settlement agreement, Mr. Blanck's office contacted defense counsel to make the following change with respect to section 3:

> In the event of the *closure of all administrative segregation units* at Nevada State Prison, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation.[1]

(Doc. # 577-2 Ex. G (emphasis added).) It goes on to state, "**With this change, we are ready to sign the Settlement Agreement.**" (*Id.* (emphasis added).)

In response, defense counsel circulated a final version of the settlement agreement which contained the language as proposed by Plaintiff's counsel. (Doc. # 577-2 Ex. G.) It read:

> In the event of the *closure of all administrative segregation units* at Nevada State Prison, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation.

(Doc. # 577-2 Ex. G at 49 (emphasis added).)

On February 24, 2011, Mr. Blanck's office wrote that they were authorized to sign the

---

[1] It previously read: "In the event of the closure of *the* administrative segregation unit at Nevada State Prison..." (Doc. # 577-2 Ex. E) and was requested to be changed to read, "In the event of the *closure of all* administrative segregation units at Nevada State Prison..." (Doc. # 577-2 Ex. G.)

9

1  latest version of the agreement on Plaintiff's behalf. (Doc. # 577-2 Ex. H.) The agreement was
2  executed on Plaintiff's behalf. (*Id.* at Ex. I.)

3  While there was an error in sending a previous version of the agreement with the
4  executed signature pages later on, it is clear that the intent of the agreement was as expressed
5  in Ex. G, *i.e.*, that a transfer to ESP was triggered by the closure of all administrative
6  segregation units at Nevada State Prison. This is confirmed in the letter from Mr. Blanck's
7  office to defense counsel after the error regarding attachment of the wrong version of the
8  agreement was discovered. (*See* Doc. # 577-2 Ex. K (stating "In our negotiations concerning
9  the settlement agreement, I sent you an email requesting that in Paragraph 3.A.3, you change
10 it from Administrative Unit 12 to **all** administrative segregation units…").)

11 The foregoing demonstrates that Plaintiff's counsel expressly requested and approved
12 the inclusion of the provision for transfer to ESP upon closure of all administrative segregation
13 units at Nevada State Prison. A provision for transfer to ESP upon closure of NSP was never
14 a term of the settlement agreement. Accordingly, it is not necessary to conduct a hearing as to
15 this issue, and Plaintiff's motion (Doc. # 552) should be denied.

16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28

10

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's motion (Doc. # 552).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: February 9, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

11