**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

KEVIN FERNANDEZ,         )     3:06-cv-00628-LRH (WGC)
           Plaintiff,    )
                    )    **REPORT AND RECOMMENDATION**
          vs.          )    **OF U.S. MAGISTRATE JUDGE**
                    )
STATE OF NEVADA, et. al.   )
                    )
          Defendants.  )

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court are motions to enforce the settlement agreement filed by both Plaintiff (Doc. # 564[1], Doc. # 571 (Supplement)) and Defendants (Doc. # 577). Plaintiff opposed Defendants' motion (Doc. # 587) and Defendants replied (Doc. # 597).

After a thorough review, the court recommends that Defendants' motion to enforce the settlement agreement (Doc. # 577) be granted, and Plaintiff's motion to compel enforcement of the agreement (Doc. # 564) be denied.

## I. BACKGROUND

Plaintiff Kevin Fernandez is currently in the custody of the Nevada Department of Corrections (NDOC). (Pl.'s Third Am. Compl. 2 (Doc. #306).) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*)

In the only remaining cause of action, Plaintiff claims that because Defendants labeled

---

[1] Refers to court's docket number.

1    him a high-risk sex offender under Nevada Revised Statutes § 213.1214 and Administrative

2    Regulation (AR) 813, he is ineligible for parole and has suffered stigmatizing consequences

3    from the label in violation of his procedural due process rights. (Doc.  #306 16-19, 20-25, 32-

4    34, Doc. # 337, Doc. # 416, Doc. # 454.)

5         After granting summary judgment as to the majority of Plaintiff's claims, the case was

6    set for trial on March 1, 2011, and referred to Magistrate Judge McQuaid for purposes of

7    conducting a settlement conference. (Doc. # 476, Doc. # 479.) A settlement conference was

8    held on October 6, 2010.  (Doc. # 501.)  The parties were unable to settled the case.  (*Id.*)

9         Informal settlement negotiations continued, and on February 24, 2011, Defendants filed

10   a notice of settlement. (Doc. # 532.) The notice stated that the parties reached a settlement and

11   were in the process of finalizing a written agreement. (*Id.*) The notice further informed the

12   court that a stipulation for dismissal would be filed as soon as Defendants fulfilled certain

13   obligations under the agreement. (*Id.*)  Defendants also requested that the March 1, 2011 trial

14   date be vacated. (*Id.*)

15        A stipulation for dismissal has yet to be filed, but both parties have moved to enforce the

16   settlement agreement. (Doc. # 564, Doc. # 571, Doc. # 577.)

17                              **II.  LEGAL STANDARD**

18        The court has inherent authority under federal law to enforce a settlement agreement

19   in an action pending before it. *Callie v. Near*, 829 F.2d 888, 890 (9th Cir.  1987);*TNT*

20   *Marketing, Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir.  1986) (citations omitted)*; see also*

21   *Marks-Foreman v.  Reporter Pub. Co.*, 12 F.Supp.2d 1089, 1092 (S.D. Cal.  1998) (citations

22   omitted). A settlement agreement must meet two requirements to be enforced. First, it must

23   be a complete agreement. *Callie*, 829 F.2d at 890**.** Second, both parties or their authorized

24   attorneys must agree to the terms of the settlement. *See Harrop v.  Western Airlines, Inc.*, 550

25   F.2d 1143, 1144-45 (9th Cir.  1977). If a party gives his or her attorney express permission to

26   enter a settlement agreement, the attorney may do so. *Id.*  at 1145. Where material facts

27   concerning the terms or existence of settlement agreement are disputed, the parties are entitled

28                                        2

to an evidentiary hearing. *Callie*, 829 F.2d at 890.

"[T]he construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally," even if the underlying cause of action is federal. *O'Neil v. Bunge Corp.*, 365 F.3d 820, 832 (9th Cir. 2004) (internal quotation marks and citations omitted) (applying Oregon law); *United Comm. Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992) (applying California law); *Jeff. D. v. Andrus*, 899 F.2d 753, 769 (9th Cir. 1989) (applying Idaho law); *Turnberry Pavillion Partners, L.P. v. M.J. Dean Constr., Inc.*, 2009 WL 905055, at *3 (D. Nev. 2009) (applying Nevada law), *reversed on other grounds*, 378 Fed.Appx. 758 (9th Cir. 2010) (finding that Nevada law governed interpretation of the contract).

For a contract to be enforceable, basic contract principles require an offer and acceptance, meeting of the minds, and consideration. *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005). Where essential terms of a proposal are accepted with qualifications, or not at all, there is no agreement. *Heffern v. Vernarecci*, 92 Nev. 68, 70, 544 P.2d 1197 (1976). In Nevada, contract interpretation is a legal issue determined by the court. *Sheehan & Sheehan v. Nelson Malley and Co.*, 121 Nev. 481, 117 P.3d 219, 223 (2005); *Canfora v. Coast Hotels and Casinos, Inc.*, 121 Nev. 771, 121 P.3d 599, 603 (2005) (per curiam).

## III.  DISCUSSION

### A.  Factual Background

The parties reached a settlement of this matter on February 3, 2011, which was to be reduced to a formal written agreement. (Doc. # 577 at 1, 2, Doc. # 577-2 Ex. O (Lerud Decl.) at ¶¶ 4, 5.) On the same day, defense counsel prepared a written agreement memorializing the negotiations and agreement, which was sent to Plaintiff. (Doc. # 577 at 2-3, Doc. # 577-2 Ex. A.) The written agreement sent to Plaintiff indicated that Defendants agreed to the following key terms:

> 1. Defendants agree to make a concerted effort to place Fernandez in custodial housing in another available state.

3

1    2. While interstate transfer is pending, Defendants agree to transfer Fernandez
2    from High Desert State Prison to Nevada State Prison, to be housed in Unit 12
     long-term administrative segregation.
3    3. In the event of the closure of the administrative segregation unit at Nevada
     State Prison, Defendants agree to transfer Fernandez to Ely State Prison for
4    placement in long-term administrative segregation.   It is understood that
     Fernandez's long-term housing may be affected by Fernandez's request for a
5    transfer not contemplated by this Agreement, or any disciplinary incidents that
     may occur.
6    4.   Defendants agree Fernandez will be transported from High Desert State
     Prison to Nevada State Prison in a separate cage in the transport vehicle.   In
7    addition, during this transfer, Fernandez will be held in a cell or space separate
     from other inmates while held in any institutional transport/transfer unit.
8    5.   Defendants further agree that Fernandez will be brought before the
     Psychological Review Panel for a new hearing within forty-five days of being
9    received in a Northern Nevada institution, and the psychological evaluations
     preceding the hearing will be completed by Northern Nevada staff.  By entering
10   into this Agreement, Fernandez understands the time-frame for a new
     Psychological Review Panel hearing as contained in the Court's order of February
11   1, 2011, is waived so that Fernandez can be evaluated by Northern staff.   In
     relation to this hearing, Fernandez will receive all due process protections
12   described by the Court in its Report and Recommendation of February 22, 2010.
     6.  Defendants further agree to withdraw their objection to Fernandez's request
13   to have the court record in 3:06-cv-628-LRH-RAM sealed.  By withdrawing their
     objection, Defendants agree to take no position with respect to Plaintiff's request.

14   (Doc. # 577-2 Ex. A.) In exchange, Plaintiff agreed to enter a stipulation for dismissal of this

15   action. (*Id.*)

16       In the interim, Plaintiff retained attorney Jeffrey Blanck to review the settlement

17   agreement. (Doc. # 577-2 Ex. O (Lerud Decl.) at ¶ 6.) On February 4, 2011, Mr. Blanck's office

18   contacted defense counsel and a copy of the settlement agreement was sent to his office. (Doc.

19   # 577 at 3, Doc. # 577-2 Ex. B.)

20       On February 14, 2011, defense counsel received an email from Mr. Blanck with some

21   requested changes to the original settlement agreement. (Doc. # 577 at 3, Doc. # 577-2 Ex. C.)

22   None of the changes requested by Mr. Blanck were substantive. (Doc. # 577-2 Ex. C.)  Mr.

23   Blanck also referenced requested changes that the Plaintiff sent directly to defense counsel.

24   (*Id.*) On the same date, Mr. Blanck sent another email indicating he had spoken with Plaintiff

25   and would be sending on Plaintiff's requested changes. (Doc. # 577 at 3, Doc. # 577-2 Ex. D.)

26   On February 16, 2011, Mr. Blanck sent defense counsel another email containing the changes

27   requested directly by Plaintiff. (Doc. # 577 at 3, Doc. # 577-2 Ex. E.) Plaintiff requested the

28                                                   4

following substantive changes with respect to Defendants' obligations:

> 1. Defendants agree to immediately exercise all available efforts to secure custodial housing transfer for Fernandez within any other available state, excluding the State of California, including but not limited by, making such efforts with those twelve states discussed at the February 3, 2011 telephonic conference between Fernandez to Alicia Lerud, Rex Reed, Don Helling. Defendants agree not to transfer Fernandez to California. Defendants agree to remove Fernandez from any such placement within 90 days of making such written request by Fernandez.
> 2. Insert word "immediately" between "to" and "transfer" in the first line of the sentence.
> 3. In the event of the closure of the Nevada State Prison, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation. It is understood that Fernandez's long-term housing may be affected by Fernandez's request for a transfer not contemplated by this Agreement.
> 5. Change "forty-five days" to "thirty days." Add Docket number to referenced court orders.

(Doc. # 577-2 Ex. E at 30.)

On February 16, 2011, defense counsel spoke with Mr. Blanck regarding the requested changes, and a revised version of the settlement agreement was sent to Plaintiff and Mr. Blanck. (Doc. # 577 at 3, Doc. # 577-2 Ex. O (Lerud Decl. at ¶ 6, Ex. F.) After speaking with Mr. Blanck, defense counsel informed Plaintiff that the provision requiring removal from any out-of-state institution within ninety (90) days of Plaintiff's request would not be included. (Doc. # 577-2 Ex. F.) In addition, the time period to hold the Psychological Review Panel hearing was left at forty-five (45) days, and not changed to the thirty (30) days requested by Plaintiff. (*Id.*) The revised settlement agreement provided the following with respect to Defendants' obligations:

> 1. Defendants agree to immediately exercise all available efforts to secure a custodial housing transfer for Fernandez to another state with which Nevada has an interstate compact agreement, including but not limited by making such efforts with those states that currently "owe" Nevada time as discussed at the February 3, 2011 telephonic conference between Fernandez, Alicia Lerud, Rex Reed, and Don Helling. Defendants agree that they will not seek to place Fernandez in California.
> 2. While interstate transfer is pending, Defendants agree to immediately transfer Fernandez from High Desert State Prison to Nevada State Prison, to be housed in Unit 12 long-term administrative segregation.
> 3. In the event of the closure of the administrative segregation unit at Nevada State Prison, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation. It is understood that Fernandez's long-term housing may be affected by Fernandez's request for a transfer not contemplated by this Agreement.

5

1

2

3

4

5

6

7

8

9

4.  Defendants agree Fernandez will be transported from High Desert State Prison to Nevada State Prison in a separate cage in the transport vehicle.  In addition, during this transfer, Fernandez will be held in a cell or space separate from other inmates while held in any institutional transport/transfer unit.

5.   Defendants further agree that Fernandez will be brought before the Psychological Review Panel for a new hearing within forty-five days of being received in a Northern Nevada Institution, and the psychological evaluations preceding the hearing will be completed by Northern Nevada staff.  By entering into this Agreement, Fernandez understands the time-frame for a new Psychological Review Panel hearing as contained in the Court's order of February 1, 2011 (Docket # 529), is waived so that Fernandez can be evaluated by Northern staff.   In relation to this hearing, Fernandez will receive all due process protections as described by the Court in its Report and Recommendation of February 22, 2010 (Docket # 416).

6.  Defendants further agree to withdraw their objection to Fernandez's request to have the court record in 3:06-cv-0628-LRH-RAM sealed.  By withdrawing their objection, Defendants agree to take no position with respect to Plaintiff's request.

10

(Doc. # 577-2 Ex. F at 38-39.)

11

12

13

14

15

On February 23, 2011, Mr. Blanck's office sent another email requesting a final change to the first revised settlement agreement. (Doc. # 577 at 3, Doc. # 577-2 Ex. G.) The proposed change read as follows: "In the event of the closure of all administrative segregation units at Nevada State Prison, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation." (Doc. # 577-2 Ex. G.)

16

17

A final version of the settlement agreement incorporating the requested change was sent back to Mr. Blanck. (Doc. # 577-2 Ex. G.)

18

19

20

On February 24, 2011, the Agreement was signed on behalf of Plaintiff, and the signature page (not the full agreement) was emailed to Ms. Lerud.  (Doc. # 577 at 5, Doc. # 577-2 Ex. H, Ex. I.)

21

22

23

24

On March 10, 2011, Plaintiff was transferred from High Desert State Prison (HDSP) to Nevada State Prison. (Doc. # 577 at 5, Doc. # 577-2 Ex. P (Reed Decl.) at ¶ 6.) Once transferred to NSP, Plaintiff was housed in a single-cell and was placed on walk-alone status. (Doc. # 577 at 6, Doc. # 577-2 Ex T.)

25

26

On March 23, 2011, counsel withdrew Defendants' objections to have the record in this matter sealed. (Doc. # 577 at 6, Doc. # 535.)

27

On March 24, 2011, the signature page of the final agreement was received back from

28

6

1    Don Helling. (Doc. # 577 at 6, Doc. # 577-2 Ex. I.)

2        On March 24, 2011, an executed copy of the settlement agreement was sent to Plaintiff

3 with a copy of a stipulation for dismissal. (Doc. # 577 at 6, Doc. # 577-2 Ex. J.) It appears that

4 when the executed agreement was sent to Plaintiff, the signature page was inadvertently

5 attached to the first revised version, rather than to the final agreement. (*Id.*)

6        On April 5, 2011, Plaintiff was transferred from NSP to Ely State Prison (ESP) due to the

7 closure of the only remaining administrative segregation unit at NSP. (Doc. # 577 at 6, Doc. #

8 577-2 Ex. T, Ex. P (Reed Decl.) at ¶ 7.)

9        On April 20, 2011, a case note indicates that Plaintiff received all legal documents

10 needed for his upcoming Psychological Review Panel hearing. (Doc. # 577 at 6, Doc. # 577-2

11 Ex. T.)

12        On April 26, 2011, Mr. Blanck's office sent an email to defense counsel stating that

13 Plaintiff had been moved from NSP to ESP. (Doc. # 577-2 Ex. K.) The email also stated that

14 the settlement negotiations included a requested change regarding a transfer to ESP only if *all*

15 administrative segregation units at NSP were closed. (*Id.*) The email inquired why the executed

16 agreement did not reflect this change. (*Id.*)

17        On the same date, defense counsel responded to Mr. Blanck's office, stating that the

18 transfer was completed because the long-term administrative segregation unit at NSP was

19 closed. (Doc. # 577-2 Ex. K.) Defense counsel also confirmed that the requested change should

20 have been included in the final executed settlement agreement. (*Id.*) Defense counsel

21 confirmed that the administrative segregation unit at NSP had closed, and that Plaintiff had

22 therefore been transferred in accordance with the settlement agreement. (Doc. # 577-2 Ex. O

23 (Lerud Decl.) at ¶ 10.)

24        On April 27, 2011, Plaintiff was seen before the Psychological Review Panel. (Doc. # 577-

25 2 Ex. R.) The panel found that Plaintiff did not pose a high risk to reoffend and referred him

26 to the parole board. (Doc. # 577-2 Ex. R, Ex. S.)

27        On April 28, 2011, defense counsel left a message for Mr. Blanck asking how he wanted

28

1   to proceed in light of the error in the forwarded version of the settlement agreement, but

2   received no response. (Doc. # 577 at 7, Doc. # 577-2 Ex.  O (Lerud Decl.)  at ¶ 11.)

3       On May 12, 2011, Plaintiff was transferred from ESP to Warm Springs Correctional

4   Center to await out-of-state transfer. (Doc. # 577-2 Ex.  T.) On May 18, 2011, Plaintiff was

5   transferred to custodial housing in North Dakota.  (*Id.*)

6       On June 6, 2011, Plaintiff filed a notice of change of address indicating an Idaho address

7   despite the fact that he was housed in North Dakota. (Doc. # 577 at 8, Doc. # 544.)

8       In July 2011, Plaintiff contacted defense counsel arguing that the settlement agreement

9   was changed after he signed it, resulting in his transfer to ESP.  (Doc. # 577 at 8, Doc. # 577-2

10  Ex.  M.)  Defense counsel explained the error regarding the attachment of the first revised

11  version of the agreement. (*Id.*)

12      On September 14, 2011, Plaintiff was transferred back from North Dakota.  (Doc. # 577

13  at 9, Doc. # 577-2 Ex.  T, 9/15/11.)  The case note regarding the transfer states:

14          This inmate was housed in North Dakota via the Interstate Compact.  ND
            contacted us and advised that they are unwilling to keep him.  ND stated, "He is
15          extremely paranoid individual and he is currently in protective custody at his
            request, due to unfounded claims of harassment and threats by other inmates.
16          He has repeatedly refused to work with staff and will not even come out of his
            cell for showers, due to his distrust of security staff.  He has also refused to see
17          the counselors and mental health professionals.  We cannot accommodate Mr.
            Fernandez at our facility, while he is in this state of mind and unwilling to
18          cooperate with staff.
            Central Trans has returned him to NNCC.

19  (Doc. # 577-2 Ex.  T at 9/15/11.)

20  **B.  ANALYSIS**

21      Plaintiff argues that Defendants have not fulfilled their obligations under the Settlement

22  Agreement because: (1) the interstate transport was not conducted in secret; (2) Plaintiff was

23  transferred to ESP prior to the complete closure of NSP; and (3) Plaintiff was not given the full

24  due process protections with respect to his April 2011 Psychological Review Panel hearing.

25  (Doc.  # 564, Doc. # 571, Doc. # 587.)

26      Defendants argue that they have fulfilled their obligations under the settlement

27  agreement, yet Plaintiff has refused to stipulate to this dismissal of this matter.  (Doc. # 577.)

28                                                  8

**1.  Interstate Transport**

It is clear from the communications and varying versions of the settlement agreement produced by Plaintiff and Defendants that keeping Plaintiff's interstate transfer and transfer location a secret was *never* a term of the agreement. In fact, the first mention of it is in Plaintiff's motion.  This term is not contained in any of the drafts of the agreement, and it was not in the final version of the agreement that Plaintiff authorized his counsel to sign on his behalf. (Doc. # 577-2 Ex. A, Ex. B, Ex. C, Ex. E, Ex. F, Ex. G.)  Nor was it contained in the list of requested changes sent directly by Plaintiff. (Doc. # 577-2 Ex. E.)

Plaintiff's desire to introduce a secrecy provision after-the-fact will not be read into the agreement. The executed agreement contains a provision stating that the settlement agreement "contains the entire understanding between the parties" and "there are no representations, warranties, agreements, arrangements, or undertakings, oral or written…which are not fully expressed" in the settlement agreement.  (Doc. # 577-2 Ex. I at 60.) Plaintiff's argument that Defendants failed to comply with the terms of the settlement agreement because his interstate transfer was not conducted in secret is unavailing.

To the extent Plaintiff argues in his opposition that Defendants failed to meet their obligation to secure long-term interstate transfer (Doc. # 587 at 8-10), this argument is also unavailing.  Defendants agreed to exercise all available efforts to secure a custodial housing transfer for Plaintiff to another state.  (Doc. # 577-2 Ex. G.)  They exercised such efforts, and Plaintiff was transferred to North Dakota.  (Doc. # 577-2 Ex. T)  The settlement agreement contains no provision about any continuing efforts to secure interstate transfer if Plaintiff were ever sent back to Nevada, as was the case here.  The court will not read such a term into the agreement.

**2.  Transfer to ESP**

The final version of the agreement, as agreed to by Plaintiff's counsel Mr. Blanck, stated that Plaintiff would be transferred to ESP if *all* administrative segregation units at NSP were closed. (Doc. # 577-2 Ex G.) Plaintiff argues that it should have read that he would only be

1   transferred to ESP upon the closure of NSP.  (Doc. # 564, Doc. # 571.)

2        The initial version of the settlement agreement circulated to Plaintiff stated:

3        3.  *In the event of the closure of the administrative segregation unit at Nevada*
        *State Prison*, Defendants agree to transfer Fernandez to Ely State Prison for
4        placement in long-term administrative segregation.  It is understood that
        Fernandez's long-term housing may be affected by Fernandez's request for a
5        transfer not contemplated by this Agreement, or any disciplinary incidents that
        may occur.

6   (Doc. # 577-2 Ex. A at 6 (emphasis added).) A copy of this version of the settlement agreement

7   was also sent to Mr. Blanck. (Doc. # 577-2 Ex. B.)

8        Mr. Blanck did not suggest any changes to this term of the agreement. (Doc. # 577-2 Ex.

9   C.) Mr. Blanck forwarded some requested changes that he received directly from Plaintiff.

10  (Doc. # 577-2 Ex. E.) One of his proposed changes was regarding a transfer to ESP from NSP.

11  The language of his requested change was as follows:

12       3.  *In the event of the closure of the Nevada State Prison*, Defendants agree to
        transfer Fernandez to Ely State Prison for placement in long-term administrative
13       segregation.  It is understood that Fernandez's long-term housing may be
        affected by Fernandez's request for a transfer not contemplated by this
14       Agreement.

15  (Doc. # 577-2 Ex. E at 30 (emphasis added).)

16       Defense counsel had a conversation with Mr. Blanck concerning the proposed revisions,

17  and subsequently circulated a revised version of the settlement agreement. (Doc. # 577-2 Ex.

18  F.) This revised version of the settlement agreement was also sent to Plaintiff at the prison.

19  (*Id*.)  Notably, the revised version of the agreement did not contain Plaintiff's proposed

20  language. The revised version contained the following language concerning a transfer from NSP

21  to ESP:

22       3.  *In the event of the closure of the administrative segregation unit at Nevada*
        *State Prison*, Defendants agree to transfer Fernandez to Ely State Prison for
23       placement in long-term administrative segregation.  It is understood that
        Fernandez's long-term housing may be affected by Fernandez's request for a
        transfer not contemplated by this agreement.

24  (Doc. # 577-2 Ex. F (emphasis added).) Thus, even after discussing the proposed changes with

25  Plaintiff's counsel, the revised version did not contain the requested change with respect to the

26  term governing transfer to ESP.

27       In response to receiving this version of the settlement agreement, Mr. Blanck's office

28                                        10

1     contacted defense counsel to make the following change with respect to section 3:

2
3
> In the event of the *closure of all administrative segregation units* at Nevada State Prison, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation.[2]

4     (Doc. # 577-2 Ex. G (emphasis added).) It goes on to state, "**With this change, we are ready to sign the Settlement Agreement.**" (*Id.* (emphasis added).)

5
6        In response, defense counsel circulated a final version of the settlement agreement which contained the language as proposed by Plaintiff's counsel. (Doc. # 577-2 Ex. G.) It read:

7
8
9
> In the event of the *closure of all administrative segregation units* at Nevada State Prison, Defendants agree to transfer Fernandez to Ely State Prison for placement in long-term administrative segregation.

(Doc. # 577-2 Ex. G at 49 (emphasis added).)

10        On February 24, 2011, Mr. Blanck's office wrote that they were authorized to sign the

11 latest version of the agreement on Plaintiff's behalf. (Doc. # 577-2 Ex. H.) The agreement was

12 executed on Plaintiff's behalf. (*Id.* at Ex. I.)

13        While there was an error in sending a previous version of the agreement with the

14 executed signature pages later on, it is clear that the intent of the agreement was as expressed

15 in Ex. G, *i.e.*, that a transfer to ESP was triggered by the closure of all administrative

16 segregation units at Nevada State Prison. This is confirmed in the letter from Mr. Blanck's

17 office to defense counsel after the error regarding attachment of the wrong version of the

18 agreement was discovered. (*See* Doc. # 577-2 Ex. K (stating "In our negotiations concerning

19 the settlement agreement, I sent you an email requesting that in Paragraph 3.A.3, you change

20 it from Administrative Unit 12 to **all** administrative segregation units…").)

21        The foregoing demonstrates that Plaintiff's counsel expressly requested and approved

22 the inclusion of the provision for transfer to ESP upon closure of all administrative segregation

23 units at NSP. A provision for transfer to ESP upon closure of NSP was never a term of the

24 settlement agreement. Plaintiff does not dispute that all administrative segregation units at

25 NSP were closed, resulting in his transfer to ESP. Accordingly, the court finds that Defendants

26

_____

27      [2] It previously read: "In the event of the closure of *the* administrative segregation unit at Nevada State Prison…" (Doc. # 577-2 Ex. E) and was requested to be changed to read, "In the event of the *closure of all* administrative segregation units at Nevada State Prison…" (Doc. # 577-2 Ex. G.)

28

fulfilled their obligation under the settlement agreement in this regard.

**3. Psychological Review Panel Hearing**

It appears Plaintiff is arguing that he did not receive proper notice of his hearing and that he did not receive a detailed written decision regarding his April 27, 2011 Psychological Review Panel hearing.  (Doc. # 564, Doc. # 587 at 20-21.)

Plaintiff received a Psychological Review Panel hearing on April 27, 2011, and the panel found that Plaintiff did not pose a high risk to sexually reoffend.  (Doc. # 577 at 13-14, Doc. # 577-2 Ex.  S (Schofield Decl.)  at ¶ 6, Ex.  Q, Ex R, Ex.  S, Ex.  T.)

Plaintiff was given notice of his April 27, 2011 Psychological Review Panel hearing on April 8, 2011.  (Doc. # 577-2 Ex.  Q.)  He was subsequently given notice of the results which found that Plaintiff did not pose a high risk to re-offend, and was referred to the parole board.  (Doc. # 577-2 Ex.  R.)

The court finds that the notice provided to Plaintiff, approximately two and a half weeks before his hearing, was sufficient to comport with the requirements in *Wolff v. McDonnell*, 418 U.S. 539 (1974).  The court also finds that the notification of results sufficiently afforded Plaintiff his due process rights.  While *Wolff* requires a "written statement by the fact finders as to the evidence relied on and the reasons for the disciplinary action", *Wolff*, 418 U.S. at 564-65 (internal quotation marks and citation omitted), Plaintiff was not faced with a disciplinary action.  Instead, he was given a Psychological Review Panel hearing where it was determined that Plaintiff did not pose a high risk to reoffend, and he was referred to the parole board.  (Doc. # 577-2 Ex.  R.)  Requiring a detailed description of the evidence relied on makes sense in the context of a disciplinary hearing, but not in the context of the Psychological Review Panel, especially when the results were favorable to Plaintiff, as they were here.  Accordingly, the court finds that Defendants fulfilled their due process obligations under the settlement agreement with respect to the Psychological Review Panel hearing.

///

///

12

## IV.  CONCLUSION

In conclusion, the court finds that the parties entered into a complete settlement agreement and that the parties, or their authorized agents, agreed to the terms of the agreement.  The court further finds that Defendants complied with their obligations under the settlement agreement.  Accordingly, the settlement agreement should be enforced so that Plaintiff must execute a stipulation for dismissal of this action pursuant to the terms of the agreement.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's motion (Doc. # 564) and **GRANTING** Defendants' motion (Doc. # 577).

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: March 1, 2012

_____
WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE

13